35 N.J. Super. 118 (1955)
113 A.2d 433
SANTO CROPANESE, PLAINTIFF-APPELLANT,
v.
PHILIP MARTINEZ AND MARY MARTINEZ, HIS WIFE, DEFENDANTS-RESPONDENTS, AND STANDARD ACCIDENT INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1955.
Decided April 7, 1955.
*119 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Isadore Waks argued the cause for appellant (Mr. Sam Weiss, on the brief).
Mr. Richard A. Dunne argued the cause for respondents (Messrs. Emory, Langan & Lamb, attorneys; Mr. James J. Langan and Mr. Dunne, of counsel and on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff sued to recover damages for injury to his fingers suffered while he was helping defendant Martinez assemble lengths of iron pipe on defendant's premises. The action against the insurance company under the second count of the complaint was discontinued at pretrial. The Law Division granted defendants' motion for judgment of involuntary dismissal at the close of plaintiff's case, and plaintiff appeals.
Plaintiff and Martinez had moved into nearby houses in a new development in Totowa some two years before the occurrence in question. Prior to the accident they helped each other with various projects on their respective premises. Plaintiff and his wife were at the Martinez home on Sunday afternoon, August 2, 1953, arriving at 1:00 or 1:30 P.M. Plaintiff gave as the reason for his presence there the fact that Martinez had asked him to help assemble a 45-foot length of pipe that would be used as part of a fence defendant intended erecting. The two had done some work on the project before the day in question, plaintiff having helped Martinez mix cement and build a retaining wall. Work on the pipe began immediately after plaintiff arrived. They measured the pipe into seven-foot lengths, cut and threaded each piece, and then proceeded to assemble them by screwing one section into another atop a cinder-block wall. Plaintiff would grip the pipe near the assembling end with a wrench in his left hand, and hold the rest of the pipe with his right. *120 Martinez would start screwing the new section into the pipe which plaintiff was holding on top of the wall. Plaintiff said that when the threads got close to the end and the assembling of the two lengths became more difficult, Martinez would tell him to hold on because he was going to give the pipe a "good hard turn." Plaintiff would then grip the pipe firmly while Martinez gave the new length several hard turns so as to make a tight join. This warning was given by Martinez on the first and third lengths of pipe; it appears that plaintiff himself screwed in the second length. The accident happened when the fourth section was being screwed in. Martinez told plaintiff to keep an eye on the assembled pipe so that it would not go off the wall. He was standing close to and behind plaintiff, so that at the moment plaintiff could not see what he was doing. Plaintiff testified that Martinez gave him no notice or signal that he was going to tighten the pipe, so that he could brace himself and hold the pipe in a tight grip. What happened can best be described from the record:
"Q. Now, tell us what happened then. A. Well, I was holding on to the pipe and all of a sudden there was a hard jar in the pipe there. It happened so fast. Knowing that the pipe on the end of the wall would start to go off, I tried to hold it with my right hand. I had my right hand between the cinder blocks and I tried to hold it but it was too heavy for me to hold. The pipe slid off the wall and cut my finger and broke the end right off, and cut the other finger, too, and scraped the nail half-way off on it."
Martinez at once drove plaintiff to the hospital. As he drove out of his driveway he said: "Gee, Sam, I am sorry. I should have told you to hold on." And when he took plaintiff to the doctor's office the next evening he again said he was sorry the accident happened and that he should have told him he was going to give the pipe a hard turn.
Plaintiff was the only witness who testified on the question of liability. At the close of plaintiff's case defendants moved for dismissal on two grounds: (1) contributory negligence as a matter of law, and (2) plaintiff was a social guest. The court granted the motion on the latter ground.
*121 Defendants now concede that plaintiff was not guilty of contributory negligence or that he had assumed the risk, as a matter of law. They defend the appeal strictly on the ground that plaintiff was a social guest and Martinez was not guilty of inflicting willful injury on him.
Plaintiff claims there was error in granting the motion for involuntary dismissal: there was a jury question as to whether, at the time of the injury, he enjoyed the status of an invitee; defendants owed him the duty to use reasonable foresight to prevent harm to him as invitee; even if plaintiff were a mere social guest or licensee, defendants owed him a duty to use reasonable care to avoid injuring him through active negligence; and there was evidence of such active negligence requiring the issue of negligence to be sent to the jury.
Defendants' motion admitted the truth of plaintiff's evidence and every inference which might logically and legitimately be drawn therefrom in his favor.
Both parties invite us to consider the status of plaintiff at the time of the accident  was he an invitee or a social guest? This implicates a vast range of textual material and decisional law, much of it concerned with the Procrustean exercise of fitting into one category or another a person who comes upon another's land: invitee, licensee, social guest, business visitor, trespasser. Were we inclined to accept the approach suggested by the parties on this appeal, we would hold that the question of plaintiff's status at the time of the injury was one that should have been left to the jury for determination. It might well have concluded that plaintiff was an invitee who had come upon the premises for the express purpose of assisting defendant in constructing the pipe section of the future fence  a matter of some advantage to defendant  and therefore defendant owed him the duty of exercising reasonable care in the circumstances then present. Contrast Vogel v. Eckert, 22 N.J. Super. 220 (App. Div. 1952); Cosgrave v. Malstrom, 127 N.J.L. 505 (Sup. Ct. 1941); Lewis v. Dear, 120 N.J.L. 244 (E. & A. 1938); Morril v. Morril, 104 N.J.L. 557 (E. & A. 1928), *122 dealing with social guests who, under our decisions, have only the rights of a licensee and must take the property as they find it; and cf. Restatement, Torts (1934), § 341, p. 929 et seq.
As noted, the trial judge accepted defendant's theory of the case and, having concluded that plaintiff was a social guest, granted the motion for involuntary dismissal. While he did not say so, he was presumably deciding that plaintiff was a mere licensee to whom the defendant owed no duty other than to refrain from willful injury or active wrongdoing, as that duty is varyingly described in such cases as Boyd v. International Smelting & Refining Co., 22 N.J. Super. 1 (App. Div. 1952), and Lordi v. Spiotta, 133 N.J.L. 581 (Sup. Ct. 1946). Cf. Prosser on Torts (1941), § 78, p. 625 et seq.
The question whether plaintiff enjoyed the status of invitee or was merely a licensee is, in our view, not pertinent or basic to the determination we are called upon to make. An exploration into the opposing views as to plaintiff's status presented by counsel in their briefs and argument can only lead us into the "morass into which the law has floundered in trying to distinguish between licensees and invitees," as was said by Denning, L.J., in Dunster v. Abbott (1953), 2 All Eng. L.R. 1573, 1574 (Ct. App. 1953). In this case it does not matter whether plaintiff was an invitee or a licensee. That distinction becomes significant only in regard to what the Restatement of the Law of Torts (1934), c. 13, p. 888 et seq., refers to as liability for the "condition and use of land." The distinction, as noted by Lord Justice Denning, "is only material in regard to the static condition of the premises":
"* * * It is concerned with dangers which have been present for some time in the physical structure of the premises. It has no relevance in regard to current operations, that is, to things being done on the premises, to dangers which are brought about by the contemporaneous activities of the occupier or his servants or of anyone else. * * * In regard to current operations, the duty of the occupier  or of the person conducting the operations  is simply to use reasonable care in all the circumstances. This duty is owed alike to all persons lawfully on the premises who may be affected *123 by his activities, and it is the same whether the person injured is an invitee or a licensee, a volunteer or a guest. Negligence causing damage gives a cause of action, and it is not proper nowadays in this regard to draw any distinction between negligent acts of commission and negligent omissions. * * *" (2 All Eng. L.R. (1953), at page 1574)
Dunster v. Abbott was cited with approval in the dictum of Taneian v. Meghrigian, 15 N.J. 267, 276 (1954).
Plaintiff was not injured because of any dangerous or defective condition in or about defendants' premises, or by reason of any negligence on their part in maintaining the premises or its appurtenances. If the evidence offered on plaintiff's behalf is credible  a jury matter  he was injured as a result of Martinez' personal negligence in performing his part of the joint task of assembling the pipe. From the standpoint of principle it should make no more difference that this work was going on in the latter's back yard than if it were taking place in a shop, at plaintiff's home, or at any other place where the parties might be engaged in jointly working on the construction of an object for defendant's benefit.
To resolve the problem presented by the circumstances before us by attempting to classify plaintiff as an invitee or licensee, is to seek support in the frailest of reeds  status classification. Suppose that plaintiff and Martinez, absorbed in their work, had unconsciously stepped across the boundary of the Martinez premises and were both standing on the adjacent property while engaged in adding the fourth section of pipe to the length already assembled, and the accident had happened. What would plaintiff's "status" be then? Did he change his legal position in the middle of the activity? Did defendant's duty of care toward plaintiff become something more or less than before, or did the standard of care remain the same? And what if the role of the parties were reversed, as it was when the second pipe length was added, and Martinez was holding the pipe while plaintiff screwed in the new length?
The fact that plaintiff and Martinez were neighbors and social friends is a factor completely irrelevant to the underlying *124 problem of liability. Certainly the duty of a person to exercise reasonable care in working with another on a job which may be dangerous to the other if reasonable care is not exercised, should not be less because the other person happens to be a neighbor or social friend rather than a stranger.
Where one requests another, no matter what the so-called "status" of that other person might be, to assist him voluntarily in performing a task for the requesting party's benefit, and if the task is one which involves the risk of some danger to the assisting party should the requesting party not exercise ordinary care in performing that part of the task resolved to be done by him, he owes the assisting party a duty of reasonable care in the circumstances present. That is clearly the situation presented by the facts in the present case and we therefore hold that the question of liability here was for the jury.
The rule stated in section 341 of the Restatement of the Law of Torts, page 929, although placed under the heading "Activities Dangerous to Licensees," comes closest to our treatment of the subject at hand:
"A possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein."
Cf. the discussion in Prosser on Torts, § 78, pp. 630-631. The cases cited to the text of the Restatement, § 341 (Restatement in the Courts, perm. ed. and 1948 and 1954 supps.) and Prosser are not particularly helpful because the courts insist upon treating the problem presented by circumstances like those here present against a background of trespasser and licensee classification. See, for example, Duff v. United States, 171 F.2d 846 (4 Cir. 1949), and particularly the dissent of Chief Judge Parker, 171 F.2d, at page 851, where the problem is resolved in terms of Maryland decisional law.
Judgment reversed.