859 A.2d 709 (2004)
372 N.J. Super. 448
Lawrence RAIMO, Plaintiff-Appellant,
v.
Robert FISCHER, Darleen Fischer, Robert Parker, Parker Construction, Inc., David Parker, Oceanside Builders & Remodellers, Inc., and Nicholas Englebert, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 2004.
Decided October 20, 2004.
*710 Marc L. Winograd, Leonia, for appellant.
Lane Ferdinand, Springfield, for respondents Robert Fischer and Darleen Fischer (Francis D. McIntrye, on the brief).
Edward Hoagland, Jr., Somerset, for respondents Robert Parker and Parker Construction, Inc. (Chris W. Kemprowski, on the brief).
Methfessel & Werbel, Edison, for respondent Nicholas Englebert (Lori Brown Sternback, on the brief).
No brief was filed on behalf of respondents David Parker and Oceanside Builders & Remodellers, Inc.
Before Judges SKILLMAN, PARRILLO and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a contractor's duty of care for the safety of persons who come on a construction site is governed by the common law doctrine of premises liability, under which the tort liability of a possessor of land is determined by the injured person's classification as a business invitee, licensee or trespasser, or by general negligence principles, under which a party must exercise reasonable care for the safety of others regardless of their classification under the law of premises liability. We conclude that a contractor's tort liability is governed by general negligence principles, which require a contractor to exercise reasonable care to maintain a construction site in a safe condition for any persons the contractor may reasonably expect to come onto the site.
*711 Defendants Robert and Darleen Fischer contracted with defendant Parker Construction, Inc. (Parker Construction) to build a house on property they own in Surf City. Parker Construction subcontracted with various other contractors to perform parts of the work. One of those subcontractors was defendant Nicholas Englebert and another was defendant Oceanside Builders and Remodellers, Inc. (Oceanside).
Plaintiff and his brother came to the construction site on the morning of May 5, 2001 to meet Richard Partington, an Oceanside employee. They called out to Partington but received no answer. After they heard hammering on an upper level of the house, they began to walk up a staircase located on the exterior. As they were ascending the staircase, they called out again for Partington, and someone responded that he was not there. When plaintiff and his brother began to walk down the staircase, it fell away from the house, causing plaintiff to suffer severe personal injuries.
Plaintiff subsequently brought this personal injury action against the Fischers, Parker Construction, Englebert and Oceanside as well as the principals of Parker Construction and Oceanside. Discovery disclosed that Englebert had attached the staircase, which was a temporary structure used to gain access to the upper levels of the house during construction. The top of the staircase was attached to the house with screws and nails, and the bottom was three to four feet away from the house.
Sometime during the week before plaintiff's accident, Oceanside removed the staircase so it could frame the part of the house against which the staircase had been placed. Before leaving the construction site at the end of the day on Friday, the principal of Parker Construction, Robert Parker, hid the staircase in the garage. However, when Englebert arrived the following morning, the staircase was again resting against the house. Englebert used the staircase six or seven times before plaintiff's accident but he never checked to see whether it had been reattached to the top of the house. All the witnesses who were deposed said they did not know who had placed the temporary staircase back against the house after it had been taken down. Robert Parker speculated that "kids in the neighborhood" could have put the staircase back to gain access to the house to drink alcohol inside.
After discovery was completed, defendants moved for summary judgment. The trial court granted the motions in a brief oral opinion which stated in pertinent part:
[T]he owner or occupier of the property owes a duty to a licensee to abstain from willfully injurious acts. And as I indicated earlier, there's not an issue here as to whether or not this was a willfully injurious act.... [A]lso, if the owner or occupier knows of a hazardous condition on the premises, then they have an obligation to give warning of it or to make the conditions reasonably safe for the purposes embraced by the passage on the property by the licensee.
When we use the concept of knowledge..., we also have a concept of imputed knowledge in that either actual knowledge or that the owner or occupant had a reason to know of the hazardous condition, in this case, the temporary staircase. And in that case, they would have the duty to exercise reasonable care to either make the condition safe or to give a warning.
....
... I agree that ... the issue is whether ... any ... knowledge ... of the hazardous condition of the site could *712 be imputed to any of these Defendants....
... [B]ased upon what has been presented to me and viewed in a light most favorable to the Plaintiff, I don't think that ... the hazardous condition of the staircase could be imputed to any of these Defendants.
Plaintiff appeals from the summary judgments in favor of the Fischers, Parker Construction, its principal Robert Parker and Englebert. Plaintiff does not appeal from the summary judgment in favor of Oceanside and its principal David Parker.
We conclude that the trial court erred in applying the common law doctrine of premises liability rather than general negligence principles in considering the motions for summary judgment filed by the general contractor, Parker Construction, and its subcontractor, Englebert. Applying general negligence principles, the summary judgment in favor of Englebert must be reversed. The summary judgments in favor of Parker Construction, Robert Parker and the Fischers are affirmed.

I
The liability of a contractor for negligence in the maintenance of a construction site is not subject to the special rules of liability applicable to possessors of land; instead, a contractor has a duty to maintain the premises on which it performs work in a reasonably safe condition for persons who the contractor may reasonably expect to come onto the site. See Alloway v. Bradlees, Inc., 157 N.J. 221, 228-33, 723 A.2d 960, 963-64 (1999). The discharge of this duty includes the performance of reasonable inspections to ensure that the construction site is in a safe condition. See Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 577-78, 675 A.2d 209, 214-15 (1996).
Although our Supreme Court has articulated this duty of reasonable care under general negligence principles in the context of personal injury actions by employees of subcontractors or their representatives, Alloway, supra, 157 N.J. at 228-30, 723 A.2d at 963-64; Carvalho, supra, 143 N.J. at 574-75, 675 A.2d 209, who would be classified as invitees under the common law doctrine of premises liability applicable to possessors of land, the Court did not refer to the plaintiffs in those cases as invitees or analyze the duty of care of the defendant contractors under principles of premises liability. Instead, the Court concluded that the determination of a duty of reasonable care turns on the "foreseeability of the risk of injury" and also "`involves identifying, weighing and balancing... the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Alloway, supra, 157 N.J. at 230, 723 A.2d at 964 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110, 1116 (1993)); accord Carvalho, supra, 143 N.J. at 573, 675 A.2d at 212-13.
In Hopkins, the Court noted that "[t]he common law doctrine with its rigid classifications prescribing premises liability is rooted in early nineteenth century notions of private property interests[,]" which serve "to maximize the protection of rights of landowners to use and enjoy their land." 132 N.J. at 436, 625 A.2d at 1114. The Court also noted that "with the development of a more urbanized, heterogeneous, destabilized, and complex society, the status of persons in relation to the use of property could no longer be adequately accommodated by the strict traditional classifications of the common law." Ibid. Consequently, the Court concluded that "[t]he inquiry should be not what common law classification or amalgam of classifications most closely characterizes the relationship *713 of the parties, but ... whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition ... of a general duty to exercise reasonable care in preventing foreseeable harm ... is fair and just." Id. at 438, 625 A.2d at 1115. The Court also concluded that whether imposition of a general duty to exercise reasonable care to prevent foreseeable harm is fair and just turns on those factors"the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution"that the Court applied in Alloway to determine a contractor's duty of care. Id. at 439, 625 A.2d at 1116. Based on those factors, the Court held that "a [real estate] broker is under a duty to conduct a reasonable broker's inspection when such an inspection would comport with the customary standards governing the responsibilities and functions of ... brokers with respect to open-house tours." Id. at 444, 625 A.2d at 1118.
The only type of tort cases in which our Supreme Court has continued to apply common law principles of premises liability are those involving claims against the owners of property used for non-commercial purposes. In Tighe v. Peterson, 175 N.J. 240, 814 A.2d 1066, aff'g 356 N.J.Super. 322, 812 A.2d 423 (App.Div.2002), the Court applied those principles in determining that the owner of a residence did not have a duty to warn a social guest of a self-evident dangerous condition of a backyard swimming pool. In Parks v. Rogers, 176 N.J. 491, 825 A.2d 1128 (2003), the Court also applied those principles in determining that the owner of a beach house could be held liable to a social-guest for failing to provide adequate lighting or any warning to prevent an accident from a handrail that failed to extend the entire length of an outdoor staircase.
However, in cases involving claims against the operators of commercial enterprises, our courts have applied general negligence principles in light of the factors set forth in Hopkins and applied in Carvalho and Alloway. See, e.g., Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502-03, 694 A.2d 1017, 1020-21 (1997) (supermarket); Brett v. Great American Recreation, Inc., 144 N.J. 479, 508-09, 677 A.2d 705, 719-20 (1996) (ski resort); Ocasio v. Amtrak, 299 N.J.Super. 139, 145-51, 690 A.2d 682, 685-88 (App.Div.1997) (railroad); Mulraney v. Auletto's Catering, 293 N.J.Super. 315, 319-23, 680 A.2d 793, 795-97 (App.Div.1996) (catering facility); see also Monaco v. Hartz Mountain Corp., 178 N.J. 401, 418, 840 A.2d 822, 833 (2004) (holding that a commercial landlord had a duty to make reasonable inspections of its own property and an abutting sidewalk and to take such steps as were necessary to correct or give warnings of any hazardous condition under both the "classic commercial landowner liability standard" and the "more fluid Hopkins rule"). But see Vega v. Piedilato, 154 N.J. 496, 500-10, 713 A.2d 442, 444-49 (1998) (analyzing the liability of the owner of an apartment building for personal injuries suffered by trespasser in light of the infant trespasser rule).
The movement in our recent case law to confine application of the doctrine of premises liability to owners of properties that are used for non-commercial purposes is supported by the California Supreme Court's decision in Chance v. Lawry's, Inc., 58 Cal.2d 368, 24 Cal.Rptr. 209, 374 P.2d 185 (1962), which held that a contractor's liability for a dangerous condition at its work site should not turn on whether the injured party is classified as an invitee, licensee or trespasser, but rather on policy considerations similar to those our Supreme *714 Court identified in Hopkins. In reaching this conclusion, the Court stated:
[The] limitations on the duty of care of the owner or occupier [of land] "originated in an overzealous desire to safeguard the right of ownership as it was regarded under a system of landed estates." For that reason it can be forcefully argued that this immunity should not be extended to others....
The liability of an independent contractor to one not a party to his contract "is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm."
....
The independent contractor's duty of care was succinctly stated ... as being "a general duty imposed by law to use reasonable care to prevent damage to persons whom he may reasonably expect to be affected by his work.... [This] duty of care is owed to all those whom the contractor may reasonably expect to be affected by his work, whatever the capacity in which they come, whether as invitees or licensees or as other contractors."
[Id. at 189-90 (citations omitted).][1]
Similarly, we conclude that a contractor's duty of reasonable care under general negligence principles recognized in Carvalho and Alloway is not limited to cases involving claims by subcontractors' employees but instead extends to any persons a contractor may reasonably expect to come onto a construction site, regardless of their classification under the law of premises liability.
Applying the Hopkins factors adopted in Carvalho and Alloway, Englebert had a duty of reasonable care for the safety of persons who he could reasonably expect would come to the construction site on the Fischers' property, which included ensuring that the temporary staircase he was using to perform his work was properly attached to the house. There was certainly a "foreseeability of the risk of injury" to Englebert himself, one of the Fischers or some other person present on the construction site if the staircase fell down. Although Englebert had no relationship to plaintiff, he had a contractual relationship, through Parker Construction, to the Fischers, who came to the property the morning of plaintiff's accident and also were put at risk by Englebert's failure to ensure that the staircase had been properly reattached. Englebert acknowledged that the "attendant risk" created by the failure to properly attach the staircase was substantial. He also acknowledged that he would have had the "opportunity and ability" to avoid this risk if he had known the staircase had not been reattached, because "it only takes a minute to screw the screws back in." Under those circumstances, Englebert had a duty to take reasonable *715 steps to ensure that the staircase was properly reattached to the house.
A reasonable trier of fact could conclude that Englebert breached that duty. Englebert knew that the temporary staircase had been detached from the house when he left the construction site at the end of the day on May 4th. When he returned the morning of May 5th, the staircase was again resting against the house. Neither Parker Construction, Oceanside nor any other subcontractor was at the site when he arrived. Consequently, Englebert had no way of knowing who had placed the staircase back against the house. Nevertheless, he admittedly failed to check to see whether the staircase was reattached to the house by screws and nails in the same manner he had originally secured it. Moreover, although he walked up the staircase six or seven times before plaintiff's accident, Englebert acknowledged that such use did not provide reasonable assurance that the staircase was safely attached to the house:
Q. If one just took those steps and just placed it back against the front of the building, how would it stay in place without being nailed or screwed?
A. If you look at the pictures, ... it's a very short ... run of stairs. With the bottom of the stairs being half-buried in the sand and because of the angle of the stairs, the friction alone would hold it for quite some time. Not permanently, but they'll be there for a little while.
Q. So if you pushed sand against the bottom of it and leaned it against the building, it would just stay?
A. Putting them in place. It was all loose sugar sand. The bottom of the stairs would automatically kind of bury itself in the sand, not a lot. It would disappear an inch or two in the sand and just the friction, the lumber against the building wouldn't let it fall immediately. It's something after repeated trips up and down. It would start to slowly work its way down and eventually, it will fail.
Therefore, a trier of fact could find that Englebert was negligent in failing to inspect the staircase on the morning of plaintiff's accident to ensure that it was properly reattached to the house.

II
The trial court properly granted summary judgment to Parker Construction and its principal Robert Parker. Initially, we note that a general contractor such as Parker Construction is not vicariously liable for the negligence of one of its subcontractors. See Miltz v. Borroughs-Shelving, 203 N.J.Super. 451, 460-65, 497 A.2d 516, 520-23 (App.Div.1985); Wolczak v. Nat'l Elec. Prods. Corp., 66 N.J.Super. 64, 71, 168 A.2d 412, 415 (App.Div.1961). Therefore, at least in the absence of a contractual obligation to supervise all construction work, a general contractor cannot be held liable for a transient unsafe condition caused by a subcontractor when the general contractor is not on the site.
Robert Parker gave undisputed deposition testimony that he hid the temporary staircase in the garage when he left the premises on May 4th and that he did not return on the morning of May 5th, which was a Saturday. Plaintiff suggests that the jury could disbelieve this testimony and find, based on the fact that Robert Parker was the last person at the site on May 4th, that he was the one who placed the staircase back against the house without properly reattaching it. However, there is no evidence, either direct or indirect, that could support such a finding. In fact, both Robert Parker and Englebert testified that Parker disliked the use of temporary staircases at a construction site and permitted Englebert to use one only *716 as an accommodation to him. Consequently, plaintiff's suggestion that Parker placed the staircase back against the house without properly reattaching it is pure speculation without any factual foundation.

III
Finally, there is no basis for imposition of liability upon the Fischers for plaintiff's accident. The Fischers, whose liability for plaintiff's accident is governed by the common law doctrine of premises liability, simply contracted with Parker Construction for construction of a house on their property. They did not exercise any control over the manner in which the house was constructed and were not present at the construction site except for weekend visits. Although the Fischers happened to be at the site the morning of plaintiff's accident, there is no evidence they were responsible for placing the staircase back against the house or that they knew or should have known that the staircase created an unsafe condition. Moreover, the Fischers cannot be held vicariously liable, simply as owners of the property, for Englebert's alleged negligence in the performance of his subcontract. See Mavrikidis v. Petullo, 153 N.J. 117, 131, 707 A.2d 977, 983 (1998); Majestic Realty Assocs. v. Toti Contracting Co., 30 N.J. 425, 430-31, 153 A.2d 321, 323-24 (1959).
Accordingly, we affirm the summary judgments in favor of Parker Construction, Robert Parker and the Fischers. We reverse the summary judgment in favor of Englebert and remand the case for trial against this defendant.
NOTES
[1] Subsequent to its decision in Chance, the California Supreme Court completely abolished the common law doctrine of premises liability and now applies general negligence principles in determining the liability of possessors of land. Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). A significant number of other jurisdictions also have abrogated the doctrine or certain aspects of the doctrine. See Hopkins, supra, 132 N.J. at 437, 625 A.2d at 1115 (listing those jurisdictions as of 1993). For a more recent listing of such jurisdictions, see Vitauts M. Gulbis, Annotation, Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee or Trespasser, 22 A.L.R.4th 294, 301-03 (1983 & Supp.2004).