865 A.2d 707 (2005)
374 N.J. Super. 469
Ronald LONGO and Diana Longo, Plaintiffs-Appellants,
v.
Anthony APRILE and Denise Aprile, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 2004.
Decided January 31, 2005.
Mason, Griffin & Pierson, attorneys for appellants (Donald B. Veix, Jr., of *708 counsel; Lisa M. Randazzese, Princeton, on the brief).
David B. Wright & Associates, attorneys for respondents (Harold H. Thomasson, Cherry Hill, on the brief).
Before Judges PETRELLA, LINTNER and YANNOTTI.
The opinion of the court was delivered by
LINTNER, J.A.D.
Plaintiffs, Ronald and Diana Longo, instituted a suit against their neighbors, defendants, Anthony and Denise Aprile, for injuries sustained by Ronald when he fell from the roof of a single-story sunroom on the Aprile house while power-washing the aluminum siding. Finding that defendants did not breach a legal duty under the circumstances, the Law Division judge granted defendants' motion for summary judgment. Plaintiffs appeal and we affirm.
The facts are substantially undisputed. As neighbors, plaintiffs and defendants routinely assisted one another in household projects, without the exchange of monetary compensation. Approximately four to six weeks before the accident, Ronald purchased a power-washer from Home Depot. About two weeks prior to his fall, Ronald began power-washing defendants' house. Although aware of Ronald's activity, defendants provided no assistance or supervision. After attending a Memorial Day parade the morning of May 29, 2000, plaintiffs and defendants had lunch at a local restaurant. Following lunch, the parties returned to their homes and Ronald resumed power-washing defendants' house. Ronald hooked his power-washer to a hose and elevated it onto the roof of the single story sunroom, a vertical distance of eight feet. Ronald then climbed onto the roof and began power-washing the siding of the second floor with his back to the outside edge of the roof. Except for a small portion of the roof, which jogs inward forming a narrow corner near the rear entrance to the house, the roof is approximately eight feet deep with a gutter along its outside edge. A drip ledge is located at the small section of the roof forming the narrow corner to divert water to the gutter, thus preventing water from cascading directly off the edge. After washing the siding for fifteen to thirty minutes, Ronald believes he tripped backward on the drip ledge, causing him to fall from the roof. Anthony was sitting on his lounge chair during the entire time that Ronald was power-washing the house. Defendants did not supervise or assist Ronald in any way.
Acknowledging that the parties hotly disputed whether Ronald was a social guest or business invitee, the motion judge found that there was no enforceable commercial promise and that Ronald's legal status was one of social guest. Noting that the drip ledge was out in the open, clearly visible, and not concealed in any way, the judge found that it was not a latent condition and, therefore, defendants could not be liable to Ronald as social hosts. The judge then added:
Even assuming arguendo, the Court classified [Ronald] as a business invitee. The Court also finds there was no breach of duty under the circumstances. The work here required [Ronald] to be on the defendant's roof. And whether or not [Ronald] is deemed a social guest or a business invitee, the Court finds no genuine issue of material fact to support [his theory of negligence]
....
We have a situation where a neighbor was assisting a neighbor in a friendly and cooperative way as part of regular social interchanges that exists in our communities. The defendant[s], as *709 homeowner[s], had no duty under those circumstances cognizable in law to monitor his neighbor's activities on the roof as the plaintiff posits. The Court finds as a matter of social policy and public policy the defense had no legal duty to assist the plaintiff with the ladder or to inspect the roof before the plaintiff had climbed upon it. Indeed the plaintiff had been on it before. The defendant's presence in a lounge chair at the time of the incident is legally inconsequential.
On appeal, plaintiffs contend that (1) Ronald's status was "akin" to that of a business invitee, not a social guest. Plaintiffs also assert that, even if Ronald was a social guest, the judge misapplied the law by finding defendants had no duty to assist Ronald and concluding that public policy supported a conclusion that no duty was owed. Lastly, defendants argue that the breach of duty was a question for the jury, not the trial court.
Initially we note that it is a well-settled principle that a "question of whether a duty exists is a matter of law to be decided by the court." Rogers v. Bree, 329 N.J.Super. 197, 747 A.2d 299 (App.Div.2000); Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996); Zielinski v. Professional Appraisal Associates, 326 N.J.Super. 219, 226, 740 A.2d 1131 (App.Div.1999); S.P. v. Collier High School, 319 N.J.Super. 452, 467, 725 A.2d 1142 (App.Div.1999). With this principle in mind, we move on to discuss Ronald's legal status.
Plaintiffs rely on Cropanese v. Martinez, 35 N.J.Super. 118, 113 A.2d 433 (App.Div.1955), in support of their contention that defendants owed a duty of care to Ronald. Plaintiffs' reliance is misplaced. In Cropanese, the parties were similarly neighbors who occasionally helped each other with various property-related projects. However, unlike the facts here, the plaintiff in Cropanese was injured while assisting the defendant who was assembling a pipe when defendant twisted a section of pipe with greater force and without a prior warning, contrary to what had been his practice in the past. In Cropanese, we recognized that the status of the parties was not relevant where the plaintiff voluntarily assists the defendant in performing a task that involves a risk of danger if ordinary care was not used in the performance of the task by the defendant. Cropanese, 35 N.J.Super. at 123-124, 113 A.2d 433. In other words, we determined in Cropanese that the defendant owed a duty of reasonable care in performing his portion of the task. Ibid. Here, by contrast, Ronald was performing the task alone, without any help from defendants. Thus, defendants' legal duty, if any, arises from their status as landowner, not from any care or lack thereof used in either performing a task or helping Ronald.
Plaintiffs next argue that if defendants had hired Ronald to power-wash their house he would have been considered a business invitee. They assert that friends and neighbors would be discouraged from helping one another if the lesser duty owed to a social guest was applied simply because the neighbors had not been hired. Defendant thus urges that it would be more appropriate to apply a duty akin to that of a business invitee. In discussing the historic common law duty owed by the owner or possessor of land, our Supreme Court in Hopkins v. Fox Lazo Realtors, 132 N.J. 426, 433, 625 A.2d 1110 (1993), pointed out the following distinction between business invitees and social guests.
An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related. A lesser *710 degree of care is owed to a social guest or licensee, whose purpose for being on the land may be personal as well as for the owner's benefit. (Emphasis added).
Thus, contrary to plaintiffs' assertion, the fact that Ronald was performing a benefit for defendants does not raise his status to that of a business invitee under common law premise liability.
Finally, plaintiffs argue that the judge erred in determining that as a matter of social and public policy defendants had no duty to assist Ronald regardless of whether he was a business invitee or social guest. Under the circumstances, here we see no reason to extend or depart from the traditional duty imposed on a landowner and owed to social guest. See Hopkins, supra, 132 N.J. at 435-439, 625 A.2d 1110 (holding that a commercial real estate broker's duty to a prospective customer depends upon balancing several factors and not the traditional common law categories).
In Raimo v. Fischer, 372 N.J.Super. 448, 454-455, 859 A.2d 709 (App.Div.2004), we recently noted that "the only type of tort cases in which our Supreme Court has continued to apply common law principles of premises liability are those involving claims against the owners of property used for non-commercial purposes." More importantly, we stated that "the owner of a residence did not have a duty to warn a social guest of a self-evident dangerous condition." Ibid. (referring to Tighe v. Peterson, 175 N.J. 240, 814 A.2d 1066, aff'g 356 N.J.Super. 322, 812 A.2d 423 (App.Div.2002)) (holding that defendant did not have a duty to warn the plaintiff, a twenty-nine-year-old who had previously used defendant's pool at least twenty times, not to dive in the shallow end of an above ground pool). Here, the dangers inherent with working alone on a roof, eight feet above the ground, together with those associated with the configuration of the roof, including its narrow corner and drip ledge, were self-evident. We conclude that the motion judge correctly determined Ronald to be a social guest. Moreover, under the circumstances, the danger that he encountered was self-evident and, therefore, not actionable.
We are also constrained to make the following additional yet elementary observation. Premise liability, the scope of which changes according to the status of the plaintiff as either a business invitee or social guest, is dependant upon injury being caused by a dangerous condition of property, which involves an unreasonable risk of harm. See Restatement (Second) of Torts §§ 342 and 343; Snyder v. I. Jay Realty Co., 30 N.J. 303, 316-17, 153 A.2d 1 (1959); Berger v. Shapiro, 30 N.J. 89, 99, 152 A.2d 20 (1959). "[A] dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." Roe by M.J. v. New Jersey Transit Rail Operations, 317 N.J.Super. 72, 79, 721 A.2d 302 (App.Div.1998); see Saldana v. DiMedio, 275 N.J. Super. 488, 499, 646 A.2d 522 (App.Div.1994); Daniel v. State Dept. of Transp., 239 N.J.Super. 563, 589, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990). Nowhere in this record is there any evidence that the drip ledge was improperly installed or maintained, defectively designed, or hidden from view. Instead, as we have previously pointed out, the danger was self-evident. Simply put, there is nothing to establish that the drip ledge or the roof as it existed on the day in question qualified as a danger posing an unreasonable risk of harm to Ronald.
Affirmed.