**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1615-24

CVETANKA NECEVA,

    Plaintiff-Appellant,

v.

STOP AND SHOP #0820,

    Defendant-Respondent.

_____

> Argued October 22, 2025 – Decided December 31, 2025
>
> Before Judges Paganelli and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6819-22.
>
> Damon A. Vespi argued the cause for appellant (The Vespi Law Firm, LLC, attorneys; Damon A. Vespi, of counsel; Jared E. Drill, on the brief).
>
> Daniel I. Winter argued the cause for respondent (Cullen and Dykman, LLP, attorneys; Daniel I. Winter, of counsel; Joseph A. Keane, on the brief).

PER CURIAM

After selecting an item from a supermarket shelf, plaintiff Cvetanka Neceva turned and tripped over the partially outstretched leg of a kneeling employee stocking shelves. She filed suit for injuries and now appeals from orders granting defendant's motion for summary judgment and denying her motion for reconsideration. We affirm.

I.

The following facts are undisputed. On November 30, 2021, plaintiff was shopping at a Stop and Shop in Ridgewood, selecting an item from a refrigerated aisle. As she did so, plaintiff was aware of a store employee approximately one-foot from her, "getting boxes and putting stuff in the refrigerator." The employee was in a kneeling position with one leg extended a "little bit back." The employee gave plaintiff no verbal signal or overt visual signal of his presence. After retrieving the desired item, plaintiff turned to her right and tripped over the employee's leg, causing injury. The area was well lit and there was no other condition on the premises that may have caused her injury.

Plaintiff filed a complaint on December 22, 2022, alleging she

> was a business invitee and lawfully within the commercial premises commonly known as STOP and SHOP #0820, when she was injured by a hazardous and dangerous condition in the store, namely an employee who was on his knees on the floor and positioned in an unsafe manner stocking shelves, without notice,

2

warning, or signage, directly behind her, causing her to trip and fall over the employee, resulting in the [p]laintiff suffering serious injury.

After the parties completed discovery, defendant moved for summary judgment. The facts on which the motion was based are detailed in plaintiff's deposition:

Q[:]  What position was the man in that -- you said --

A[:]  On the right -- on the right side of me.  When I was standing facing the refrigerator was boxes, and <u>that man was on the right side first when I saw him stocking the -- kneeling and stocking the shelves with the merchandise</u>.

And took me couple seconds, I don't know, until I choose flavor of kombucha.  And I totally -- I turn around myself to get to the register.  I don't see that man coming on the front and the next to me.

I turn around myself.  He was -- he kneeling again with the one leg little bit back.  I -- I turn around myself on the right side and trip from his leg and fell down.

Q[:] So while you were facing the refrigerator choosing your kombucha --

A[:]  Yes.

Q[:]  -- where was the man in relation to you?

A[:]  First time was on the right side over the boxes. And it was between me and him was boxes full with -- he was stocking -- stocking the refrigerator with that.

3

A-1615-24

But I don't see him peek quietly out. He came on the left side of the boxes close to me because when I turn around myself, I trip from his leg and fell down.

Q[:] Okay. So when you were first looking to make a kombucha choice, you were looking at the refrigerator?

A[:] Yes.

Q[:] And I'm just trying to understand what you're saying. There was merchandise on a cart or something like that, and then he was to the right of that cart?

A[:] Yes. Kneeling down, and yes, filling the refrigerator with . . . merchandise.

Q[:] Okay. And at some point, did the employee then move?

A[:] Yes. I don't -- because I was facing and looking at kombucha, I don't see him. I don't hear him how . . . he came. And I'm on the side where the boxes close to me, and I don't --

Q[:] Okay. So then --

A[:] -- he going to be there. Just at once, he was there.

Q[:] Okay. So he moved from one side of the boxes to the other side of the boxes, where you were standing?

A[:] Correct.

Q[:] And then how close was he to you when he started putting merchandise in the refrigerator?

A[:] I don't know. Maybe [a] foot, I don't know. Because when I turn around myself, he was here -- I --

4

A-1615-24

I didn't have chance to hold -- to not fell down, just trip from his leg and fell down.

Q[:]  Now at that point, there was the merchandise, there was the employee, and there was you in a row?

A[:]  Yes -- yes.

Q[:]  Okay. And what position was the employee in; was he standing, was he sitting, was he kneeling, was he doing something else?

A[:]  When I saw him, he was kneeling a little bit and with the one leg on the back.  And how -- that's how I turn around myself on the right side, I -- I trip from his leg and fell down.

Q[:]  How long were you looking at the refrigerator to make your selection of kombucha?

A[:]  I don't know.  Maybe approximately half minute, one minute.  Maybe.

Q[:]  And in those 30 seconds to one minute, the employee walked over next to you?

A[:]  Yes.

Q[:]  And started putting merchandise in the refrigerator?

A[:]  Yes.

. . . .

Q[:]  When the man was down on his knee, was he moving in any way or was he stationary?

5

A-1615-24

A[:]  When he was putting -- getting boxes and putting stuff in the refrigerator, he was there and . . .

Q[:]  Were his arms moving?

A[:]  Yes.

Q[:]  Were his legs moving?

A[:]  Legs were down on the floor.  When I saw him when I fell down, he was like that.

[(Emphases added).]

Plaintiff adduced a report from Stephen Wilcox, Ph.D., an individual with expertise in the field of "human factors."[1]  In his report, Dr. Wilcox posited that for a "state of affairs to constitute a trip hazard," three requirements must be met:  1) "[i]t has to be in the path of travel"; 2) "[i]t has to be physically capable of causing a fall"; and 3) "[i]t has to be hidden from the potential victim at the

---

[1]  In his report, Dr. Wilcox's writes:

Human factors is the application of knowledge about human beings to the design and evaluation of the things that human beings use.  The field includes the study of human capabilities, limitations, and tendencies. Human factors professionals study, among other things, how people perceive and respond to the circumstances that they face, what they tend to do in what situations, what causes falls and other accidents, and the implications of this type of information for the design and evaluation of products, systems, and informational materials, including facilities.

6

A-1615-24

time of the fall." He opined such a state of affairs existed in this case and that plaintiff did not notice the "trip hazard" because: 1) plaintiff "was looking where she was going rather than down at her feet"; 2) "[t]he retail environment [of Stop and Shop] provided an array of visual distractions"; 3) "[t]he employee in question had moved" positioning himself such that "his leg was in [plaintiff]'s extreme peripheral vision[,] unlike a situation where . . . such a hazard is approached from a distance" affording a direct line of sight; 4) plaintiff "had no reason to expect such a hazard in her path of travel"; and 5) "[t]he employee's posture created a classic trip hazard."

At the close of discovery, defendant moved for summary judgment, arguing the store's stocking practices were consistent with normal business operations, the employee's leg did not create a dangerous or hazardous condition, and Dr. Wilcox's report constituted an inadmissible net opinion.

The court granted summary judgment to defendant. In an oral opinion rendered immediately following argument on November 15, 2024, the court stated it

> ha[d] stretched in every direction to determine how in the absence of a case, rule, regulation, manual or anything else, this can be determined to be a dangerous condition created by the Stop and Shop with which thus would have caused the injury to the plaintiff. And [t]he [c]ourt just simply cannot reach that conclusion.

7

A genuine issue of material fact must be created for a jury to consider.

This strains the definition, in [t]he [c]ourt's opinion, of a genuine issue of material fact. This is . . . [a] normal interaction in a supermarket. There are shoppers that are coming and going. Shoppers that could be kneeling down trying to obtain . . . an item on a lower shelf. Shoppers moving back and forth. Employees moving back and forth, moving things onto shelves, off the shelf.

Nothing here appears to be outside the normal operation of a . . . supermarket, as [t]he [c]ourt would understand it or know it.

. . . .

And the only thing that is in dispute here and [t]he [c]ourt has determined is not a genuine issue or material fact that a reasonable juror or jury could determine it created a dangerous condition is that an employee simpl[y] was present stocking the shelf, whether he was standing or kneeling.

As a result[,] [t]he [c]ourt cannot reach a decision that this matter should go to a jury for determination and will grant the motion for summary judgment . . . .

Plaintiff moved for reconsideration, contending the court had "failed to appreciate the totality of the evidence in granting [d]efendant's motion for summary judgment." In a January 17, 2025 order, the court denied plaintiff's motion, citing "failure to provide new evidence. Plaintiff's moving papers show no differences in their [previous] arguments made."

8

On appeal, plaintiff contends the trial court erred by granting summary judgment because a jury could have found a dangerous condition existed and defendant's failure to warn subjected it to liability. Specifically, plaintiff maintains the court misapplied the summary judgment standard and failed to appreciate the evidence demonstrating the employee's conduct fell below accepted standards. Further, she asserts the court erred in excluding plaintiff's expert report.

Defendant argues the trial court correctly recognized plaintiff's fall was no more than an unfortunate accident, not the result of negligence or any dangerous condition created by Stop and Shop. Defendant further contends the trial court's evidentiary ruling and its grant of summary judgment were fully supported by governing law and the record.

II.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a

rational factfinder to resolve the alleged disputed issue in favor of the nonmoving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

In this matter, it is undisputed plaintiff was a business invitee. A business invitee is a "person . . . invited on the premises for purposes of the owner that often are commercial or business related." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). A landowner owes to a business invitee "a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered." Id. at 434. This

includes "the duty to conduct a reasonable inspection to discover latent dangerous conditions." Ibid.

Thus, "an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2015)). Moreover, plaintiff must establish that the existence of a "dangerous condition" involved a foreseeable, unreasonable risk of harm and a defect in the property itself. See Buddy v. Knapp, 469 N.J. Super. 168, 197-98 (App. Div. 2021). It is well-established that business invitees must exercise reasonable care for their own safety, and that not every accident arising from incidental contact will support an inference of negligence. See Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) ("The mere showing of an incident . . . is not alone sufficient to authorize the finding of an incident of negligence.") (quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

Here, the undisputed evidence shows the employee, while in the course of legitimate business operation, knelt to stock shelves in an open, well-lit aisle. Plaintiff acknowledged seeing him "[thirty] seconds to one minute" as she was

selecting an item and "saw him . . . kneeling and stocking the shelves with the merchandise . . . maybe [a] foot" away from where she was standing. When she "saw him, he was kneeling a little bit and with the one leg on the back. And . . . [she] turn[ed] around [her]self on the right side . . . trip[ped on] his leg and fell down." By her own account, plaintiff was aware of the employee's presence and activities for a significant period of time before she turned to leave. She was thus under an obligation to exercise reasonable care after retrieving her item and walking away.

Moreover, we agree with the trial court that the employee's extended leg did not create a dangerous condition subjecting Stop and Shop to liability because it did not create an unforeseeable risk of harm and there was no defect in the property itself. See Knapp, 469 N.J. Super at 197-98. Plaintiff's failure to heed the presence of the employee who was performing a routine supermarket activity—where there were no visual or lighting impairments—does not create a dangerous condition of the premises.

Even if a risk of harm were deemed to exist, under the uncontested facts here, it would have been foreseeable and avoidable by a customer exercising reasonable care. Generally, "[a] landowner's duty to a business invitee to exercise reasonable care in guarding against a dangerous condition may be

satisfied by either correcting the condition, or, in those circumstances where it is reasonable to do so, by giving warning to the invitee of the unsafe condition." Kingett v. Miller, 347 N.J. Super. 566, 568 (App. Div. 2002) (citing Berrios v. United Parcel Serv., 265 N.J. Super. 436, 442 (Law Div. 1992)).  Here, because all conditions were "open and obvious" to a reasonable invitee, no specific warning was required.  See Tighe v. Peterson, 175 N.J. 240, 241-42 (2002) (holding a host had no duty to warn where guest was aware of the condition or where it could reasonably be detected); Longo v. Aprile, 374 N.J. Super. 469, 474-75 (App. Div. 2005) (holding landowners did not breach duty of care by failing to warn neighbor working on their roof because the danger was self-evident).  For these reasons, the trial court did not err in concluding the injury suffered was not legally attributable to any breach of duty on the part of Stop and Shop or its employees.

In an attempt to prove her case, plaintiff relied upon the report of Dr. Wilcox, a human factors expert, who opined the employee's leg was a tripping hazard concealed from plaintiff's view.  The trial court excluded Dr. Wilcox's proposed testimony as net opinion because he failed to provide any code, regulation, or manual governing shelf-stocking procedures that Stop and Shop violated.

13

An expert must "give the why and wherefore that supports the opinion, rather than a mere conclusion." Townsend v. Pierre, 221 N.J. 36, 54 (2015) (quoting Borough of Saddle Brook v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)) (internal quotation marks omitted). "The net opinion rule . . . mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). "By definition, unsubstantiated expert testimony cannot provide to the factfinder the benefit that N.J.R.E. 702 envisions:  a qualified specialist's reliable analysis of an issue 'beyond the ken of the average juror.'" Ibid. (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 582 (2008)).

To determine reliability of expert testimony, courts focus on "the methodology and reasoning underlying the evidence." State v. Olenowski, 253 N.J. 133, 145 (2023). "That approach is guided by a non-exhaustive list of factors outlined in Daubert."[2] Ibid.

> Those factors are (1) whether the scientific theory or technique can be, or has been, tested; (2) whether it "has been subjected to peer review and publication"; (3) "the known or potential rate of error" as well as the existence of standards governing the operation of the particular

---

[2] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

scientific technique; and (4) general acceptance in the relevant scientific community.

[Id. at 147 (quoting Daubert, 509 U.S. at 593-94).]

This standard "was designed to ensure that expert testimony 'rests on a reliable foundation.'" Ibid. (quoting Daubert, 509 U.S. at 597).

"[A] trial court's evidentiary determination is reviewed for abuse of discretion." Schwartz v. Menas, 251 N.J. 556, 570 (2022) (citing Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019)). "Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). An evidentiary ruling will be overturned only when "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

In his report, Dr. Wilcox references no methodology or scientific materials that were "subjected to peer review and publication." Nor were his conclusions supported by identified standards, scientific data, or industry regulations. Further, the "potential rate of error" of his subjective assertions is

15

unknown.  Olenowski, 253 N.J. at 147 (quoting Daubert, 509 U.S. at 593-94).

Thus, there is no way to gauge the "general acceptance in the relevant scientific

community" of his methodology, or lack thereof.  Ibid.  Since none of the

Daubert factors are present, Dr. Wilcox's expected testimony was not reliable,

and the trial court did not err in barring his opinion.

Moreover, the trial court was within its discretion to find the subject

matter—an employee kneeling or extending a leg while stocking shelves in a

well-lit, open supermarket—was not beyond the common knowledge of lay

jurors.  See State v. Kelly, 97 N.J. 178, 208 (1984) (stating one of the "basic

requirements for the admission of expert testimony" includes that the "testimony

must concern a subject matter that is beyond the ken of the average juror").

Employees kneeling to stock shelves is a routine, expected sight at

supermarkets.  Accordingly, the court did not err in determining expert

testimony was neither necessary nor admissible.

In view of our holding and the absence of any new evidence or legal

authority contained in plaintiff's motion for reconsideration, we discern no abuse

of discretion in the court's summary denial of that application.  See R. 4:49-2;

see also Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1615-24