CITY OF JERSEY CITY, APPELLANT, v. LIGGETT & MYERS
 TOBACCO CO., AND DIVISION OF TAX APPEALS IN
 THE STATE DEPARTMENT OF THE TREASURY, RE-
 SPONDENTS.

Argued November 23, 1953—Decided December 21, 1953.

Mr. *Leo Rosenblum* argued the cause for the appellant (*Mr. John B. Graf,* attorney).

Mr.: *William H. Osborne, Jr.,* argued the cause for the respondent Liggett & Myers Tobacco Co. (*Messrs. Pitney, Hardin & Ward,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The issue presented on this appeal is whether the personal property of Liggett & Myers Tobacco Company, located on floor space demised to it under a written agreement of lease dated April 12, 1948 between Lackawanna Warehouse Company, Inc. as lessor, and the Tobacco Company, as lessee, was exempt from taxation under the terms of *R. S.* 54:4–3.20.

The statute provides that personal property stored in a warehouse of any person, copartnership or corporation engaged in the business of storing goods for hire shall be exempt from taxation under *chapter* 4 of *Title* 54. It was enacted to place our public warehouses on an equal competitive footing with those of our neighboring states where no personal property taxes were imposed. *Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129, 134 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 177 (*E. & A.* 1943); *Maritime Petroleum Corp. v. City of Jersey City,* 1 *N. J.* 287, 295 (1949). We consider that the legislative reference in *R. S.* 54:4–3.20 to property stored in a warehouse contemplated the customary possession by the warehouseman, as bailee, of

goods owned by another, the bailor, and this has apparently been recognized in the decisions applying the statutory exemption. *Pattison & Bowns, Inc. v. Saddle River Twp.*, 129 *N. J. L.* 135, 136 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 177 (*E. & A.* 1943); *Halligan & McLellan, Inc. v. State Board of Tax Appeals*, 122 *N. J. L.* 551 (*Sup. Ct.* 1939); *Dearborn Chemical Co. v. Division of Tax Appeals*, 135 *N. J. L.* 580 (*Sup. Ct.* 1947).

In the *Pattison & Bowns* case the owner of coal stored it in open premises of Independent Warehouses, Inc., a warehouseman engaged in the business of storing goods for hire. In rejecting the contention that this did not come within the statutory exemption, the court expressly adopted the language in *Love v. Export Storage Co.*, 143 *F.* 1, 13 (*C. C. A.* 6 1906), that goods "may be warehoused upon a parcel of ground inclosed, or open, or partly so" and that the "only thing essential to the warehousing of goods is that their possession be changed from that of their owner to that of the warehouseman." In the *Halligan & McLellan* case the court sustained the exemption upon a finding that "there was clearly a bailment of the goods"; the absence of warehouse receipts and the exercise of a measure of supervision by the bailor's employees were considered as not creating "a different relationship." Similarly, in the *Dearborn Chemical* case the court found that the presence of the owner-prosecutor's employees at the warehouse space did not, as it viewed the testimony before it, "destroy the relationship of bailor and bailee, existing between prosecutor and the warehouse company." *Cf. Crown Can Co. v. Division of Tax Appeals*, 135 *N. J. L.* 517 (*Sup. Ct.* 1947).

In *Gilson v. Pennsylvania R. Co.*, 86 *N. J. L.* 446, 448 (*Sup. Ct.* 1914), affirmed 87 *N. J. L.* 690 (*E. & A.* 1915), Justice Trenchard stated that a bailment "consists in the holding of a chattel by one person under an obligation to return or deliver it to another after some special purpose is accomplished"; many other definitions with varying shades of meaning may be found in the books. See *Story, Bailments* (8th ed. 1870), *p.* 4; *Schouler, Bailments* (1905),

p. 2; *Paton, Bailment in the Common Law* (1952), *p.* 4. On recent occasions our courts have been called upon to determine whether new situations, unknown to the earlier common law, were to be brought within the orbit of established bailment concepts. *Marsh v. American Locker Co., Inc.*, 7 *N. J. Super.* 81 (*App. Div.* 1950), affirmed 6 *N. J.* 81 (1950); *Moore's Trucking Co. v. Gulf Tire & Supply Co.*, 18 *N. J. Super.* 467 (*App. Div.* 1952), certification denied 10 *N. J.* 22 (1952). While these were dealt with on their own footings, there was invariable approval of the basic tenet that there is no bailment unless possession and primary control of the property is in the bailee. Thus, in the *Marsh* case the court stated that the authorities "all recognize the need that there be possession of the property by the bailee." And in the *Moore's Trucking* case the court noted that "the cases dealing with a chattel of one person which is left by him on the premises of another, indicate that there is a bailment if the latter is given primary control of the chattel for the time being."

 It is clear that the ordinary delivery of goods to a public warehouseman, for redelivery to the owner when called for, constitutes a bailment within the exemption provided in *R. S.* 54:4–3.20. But it is equally clear that there may be special arrangements between the owner and the warehouseman which exclude the bailor-bailee relationship and substitute an entirely different relationship outside the statutory exemption. See 56 *Am. Jur.* 331 (1947); 138 *A. L. R.* 1137 (1942). *Cf. Frederick, Public Warehousing* (1940), *p.* 88, where the author, after defining "space rental" as the leasing from the warehouse operator of a definite space on a square-foot basis, in lieu of the rental or purchase of quarters elsewhere, said:

"The relationship between storer and warehouseman then becomes one of landlord and tenant, with the lessor performing none of the duties of a bailee; not being custodian of the merchandise of the tenant, directly or indirectly; issuing no acknowledgment or warehouse receipts for any merchandise that may be placed in the space thus leased or rented; and in no way being responsible as a warehouseman for any such merchandise."

Lackawanna has admittedly leased portions of its warehouse to companies which actually engage in manufacturing at the leased premises. It is not substantially disputed by the parties that goods stored by these companies at the leased premises are not exempt from personal property taxation. Any contrary view would seem to discriminate against New Jersey manufacturers generally and enlarge the statutory exemption beyond its acknowledged purpose. In addition, it would fly in the face of the accepted rule that since tax exemption statutes afford special privileges they are to be construed most strongly against the claimants. See *Atlantic City Transp. Co. v. Director, Division of Taxation*, 12 *N. J.* 130, 146 (1953); *Borough of Edgewater v. Connoil Corp.*, 4 *N. J. Super.* 338, 342 (*App. Div.* 1949). In any event, as suggested in *City of Trenton v. State Board of Tax Appeals*, 127 *N. J. L.* 105, 106 (*Sup. Ct.* 1941), affirmed *City of Trenton v. Rider College*, 128 *N. J. L.* 320 (*E. & A.* 1942), the actual facts presented must be examined and determination made as to whether, in the light of the principles hereinbefore expressed, the Tobacco Company's property has been adequately brought within the terms of the exemption embodied in *R. S.* 54:4–3.20.

The agreement dated April 12, 1948 between Lackawanna, as lessor, and Liggett & Myers, as lessee, was a lengthy printed document with blanks filled in and typewritten riders attached. It provided that in consideration of the rents, covenants, and agreements therein "the Lessor has let and does hereby let to the Lessee, and the Lessee has agreed to hire and take, and does hereby hire and take the following space, hereinafter called the 'demised premises' in the building known as the Lackawanna Warehouse." The leased space consisted of 33,971 square feet as indicated on an attached floor-plan. The term of the lease was fixed at five years and the annual rental was fixed at 70 cents per square foot. Although the space could be changed by the lessor for substantial cause and upon 30 days notice, a rider specified "that any change of space and the question of whether the cause to transform or change the space is substantial, must

be one that will be mutually agreed upon." Paragraph 14 provided the if the lessee remained in possession of the demised premises at the termination of the lease it would be on a tenancy basis determined by the lessor. The same paragraph stated that the lessee would use the premises for the purposes of storing and distributing its products, advertising materials and other merchandise incident to its business and that the lessor would not be liable "for loss of any property within or without the demised premises, either by theft or otherwise." There was a provision against assignment of the lease without consent of the lessor and another which released the lessor from any liability for injury resulting from "any defect in, or lack of repair of, or accident to the structure of the demised premises." The agreement set forth that the lessor "may enter and take possession of the demised premises" in the event of the lessee's bankruptcy, and upon other occurrences, and contained many other provisions which are commonplace in leases.

The Tobacco Company admittedly does not engage in manufacturing operations at the leased warehouse space. However, its use far exceeds simple storage and it may be described as the company's sole distributing center for the New York-New Jersey metropolitan area. The space is separated from other floor areas by partitions and includes direct telephone service and an office occupied by four Tobacco Company employees who supervise and direct the distributing. As required by the lease agreement, incoming merchandise is handled manually by employees of the warehouse and is delivered to the Tobacco Company's space. This service is performed under directions given by the Tobacco Company's employees to the warehouse employees and the handling charge therefor is paid to the warehouseman on a tonnage basis. Manual services required within the leased space are performed by the warehouse employees under the direction of the Tobacco Company's employees and the labor charge therefor is on a man-hour basis. In similar fashion, outgoing merchandise is handled by warehouse employees under direction of the Tobacco Company's employees. The

distributing operations are extensive; the Tobacco Company's employees receive daily instructions from their New York office and approximately 25 warehouse employees are required for the manual work.

No warehouse receipts are ever issued to the Tobacco Company; on the contrary, incoming merchandise delivered by the warehouse employees to the leased space are receipted for by the Tobacco Company. The inventory of the merchandise at the leased space is kept solely by the Tobacco Company and no copy thereof is furnished to the warehouse. While the merchandise is within the leased space the warehouseman has no responsibility whatever for it and is in nowise concerned with its safety or disposition. The leased space is completely separated from the remainder of the premises, is under the "lock and key" of the Tobacco Company and under the exclusive supervision of its employees. Under the circumstances it seems clear to us that possession and legal control of the leased space and the merchandise within it are in the Tobacco Company rather than in the warehouseman.

We do not consider that any of the foregoing is impaired by the arrangements between the Tobacco Company and the warehouse for the handling of the merchandise. The only activity of any warehouse employees within the leased space is the performance of designated manual services under the direction of the Tobacco Company, for which payment is made on a man-hour basis. As thus circumscribed the activity does not limit the Tobacco Company's possession and control of its leased space and contents. Nor do we consider that the Tobacco Company's possession and control were altered by the fact that ordinarily the outer entrances to the warehouse building are not open after customary business hours. The general manager of the warehouse testified that the Tobacco Company has the right to enter even after customary business hours provided it makes arrangements for the extra elevator and maintenance expenses incurred. There are many tenants in large commercial buildings who are similarly situated; it is beyond question that they neverthe-

less have legal possession and control of their leased premises and contents.

We find that under the circumstances presented there was no relationship of bailor and bailee and no justifiable occasion for invoking the special statutory exemption embodied in *R. S.* 54:4–3.20. The wisdom of enlarging the present statutory exemption and making it expressly applicable to personal property located within a public warehouse without regard to the nature of the relationship between the owner and the warehouseman is entirely a matter of legislative rather than judicial concern. The judgment entered in the Division of Tax Appeals is:

Reversed and the cause remanded for further proceedings in accordance with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For affirmance*—None.