994 A.2d 536 (2010)
413 N.J. Super. 212
POTOMAC AVIATION, LLC, Plaintiff-Appellant,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, First Aviation Services and Robert De Stefano, Defendants-Respondents, and
Alejandra Benavides, Marcial Benavides and Violeta Benavides, Defendants.
DOCKET NO. A-3128-08T2.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 2010.
Decided May 5, 2010.
*538 Dennis S. Deutsch, Fort Lee, argued the cause for appellant (Kaufman, Bern, Deutsch & Leibman, LLP, attorneys; Mr. Deutsch, on the brief).
Brian M. Murphy, Montvale, argued the cause for respondent Port Authority of New York and New Jersey.
Steven H. Kaplan, New York, NY (Jones Hirsch Connors & Bull) argued the cause for respondents First Aviation Services, Inc. and Robert De Stefano.
Before Judges GRALL, MESSANO and LeWINN.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiff Potomac Aviation, LLC appeals from the grant of summary judgment to defendants the Port Authority of New York and New Jersey ("the Port Authority"), First Aviation Services ("FAS"), and Robert De Stefano (collectively, *539 "defendants"), and the subsequent denial of its motion for reconsideration. We have considered the arguments plaintiff raises in light of the record and applicable legal standards. We affirm.

I.
At approximately 4:20 a.m. on January 12, 2006, while driving a car owned by defendants Marcial and Violeta Benavides, defendant Alejandra Benavides fell asleep at the wheel. The vehicle jumped the curb of Industrial Avenue, which runs along the perimeter of Teterboro Airport, plowed through a chain link fence, and struck plaintiff's airplane that was parked on the tarmac, causing significant damage. On January 10, 2007, plaintiff filed its complaint alleging that FAS and its employee De Stefano directed plaintiff "to park ... [its] [a]ircraft at a specific location ... [that] was unsafe." Plaintiff alleged that the Port Authority, which owned and operated the airport, "breached [a] duty of care by negligently selecting a fence which failed to protect [the] aircraft...."[1]
After discovery, defendants moved for summary judgment. The motion record revealed that FAS functioned as a "fixed base operator" at the airport and leased its facility from the Port Authority. Among other services, FAS provided parking and hangar facilities for various aircraft, including plaintiff's. When FAS commenced its lease in 1986, it agreed to replace the existing, deteriorated chain link fence with a new one along the Industrial Avenue perimeter of its leasehold; this new fence was still in place on the date of the accident. While the Port Authority was responsible for fencing in the common areas of the airport, it was the responsibility of the individual lessees, like FAS, to maintain the fencing along the perimeter of their leased premises.
The portion of Industrial Avenue along the perimeter of FAS's facility is a straight road without any driveways, ingress or egress points. It is a two-lane county road, approximately thirty-five feet wide, with a posted speed limit of twenty-five miles per hour. There are no guide rails along this section of Industrial Avenue, including that section adjacent to a public bus stop that is across the roadway from the airport.
On the morning of the accident, De Stefano, a ground service manager for FAS, was summoned to the airport after receiving a phone call "[t]hat a vehicle had come through the fence and hit an aircraft...." De Stefano observed Benavides's black SUV "roughly under the right wing of the aircraft...." He estimated the aircraft was parked approximately seventy-five feet from Industrial Avenue.
Plaintiff's expert Christopher P. Statile, P.E., prepared a report. He noted that FAS's property was enclosed with a cyclone fence, but "[o]ther portions of the airport [we]re enclosed by steel picket fencing connected to tubular steel posts" designed to deter trespassing. However, Statile also observed that the perimeter fencing nearest the Port Authority's offices at the airport was "protected by steel beam guide rail." Statile opined that in order "[t]o prevent errant motor vehicles from trespassing into the aircraft taxiways and parking areas, a typical beam guide rail system ... [wa]s appropriate," and such a design would have prevented the collision in this case.
Statile cited as support for his opinion, section 8.02.4 of the New Jersey Department *540 of Transportation's (the "D.O.T.") "Roadway Design Manual." That section provided "where fixed objects are found such as wood poles or posts with greater than a 50 square inch cross section[,]" guide rail protection should be used. Noting the presence of telephone and lighting poles along Industrial Avenue, Statile opined that guide rails should have been in place.
However, Section 8.02.4(2)(b) of the design manual also stated the following:
Although utility poles have a cross-sectional area greater than 50 square inches (8 inches diameter), they should not be handled the same as other warranting obstructions. It is questionable whether a safer roadside would result from installing guide rail for the sole purpose of shielding utility poles within the clear zone.
The design manual further provided that "guide rail should not be installed indiscriminately. Every effort should be made to eliminate the obstruction for which the guide rail is being considered."
In his report, defendants' liability expert, Thomas H. Chastain, P.E., noted that the federal Traffic Safety Administration (the "TSA") issued security guidelines for all general aviation airports like Teterboro. The TSA's Security Guidelines for General Aviation Airports, Information Publication A-001 (May 2004) (SG for GAA) provides,
Security fencing is the most common means of securing a perimeter. Fencing can vary in design, heights, and type depending on local security needs. Typically, fences are low-maintenance, provide clear visibility for security patrols, and are available in varieties that can be installed in almost any environment....
Fencing can vary in design and function depending on the facility. Such barriers can range from chain link fencing topped with barbed wire ... to a simple split rail fence designed to alert individuals to the presence of the airport operations area.
The guidelines suggested that a "clear zone" of ten to thirty feet be maintained between the fence and any aircraft.
The TSA's Recommended Security Guidelines for Airport Planning, Design and Construction (June 2006) (RSG for APDC) provides,
Chain link fencing is a common type of fencing and is often the most cost-effective solution when deterrence, as opposed to prevention of forced entry, is the primary security objective....
Noting these guidelines, and those contained in the D.O.T.'s design manual, Chastain opined that no guide rail was necessary along the Industrial Avenue perimeter of the FAS site.
Oral argument on defendants' summary judgment motion was held on November 21, 2008, during which FAS stipulated that it was the bailee of plaintiff's aircraft.[2] In a short written opinion that accompanied the separate orders granting defendants' motions, the judge concluded "that [d]efendants h[ad] rebutted the presumption of negligence created by the bailment ... with evidence that it [sic] did not breach its [sic] duty of care with respect to [p]laintiff's aircraft." The judge further concluded that the accident was unforeseeable *541 and, therefore, "[d]efendants [we]re not required to exercise such diligent care to protect from even [sic] unforeseeable risk."
On December 10, 2008, plaintiff moved for reconsideration. It argued that the judge had overlooked deposition testimony indicating that a car had breached the airport fencing along Charles Lindbergh Drive, another perimeter road, prior to the accident in question. Plaintiff contended that this demonstrated the instant accident was foreseeable. The judge denied the motion by order dated January 29, 2009. Plaintiff filed its appeal on March 2, 2009.

II.
Plaintiff contends that since defendants were bailees of the plane, their negligence was presumed, and whether defendants rebutted that presumption remained a factual question for the jury to determine. Plaintiff also argues that in light of the prior accident on Lindbergh Drive, the question of foreseeability was a disputed material fact to be resolved by the jury, and, therefore, summary judgment was inappropriate.
Defendants argue that any appeal of the grant of summary judgment is untimely, and that our review should be limited to only the order denying plaintiff's motion for reconsideration. FAS further contends that under all the circumstances presented, it rebutted any presumption of negligence, and that summary judgment was appropriate. The Port Authority argues that "no rational factfinder could ... reasonably conclude that" it was negligent under the circumstances. Defendants also argue that Statile's opinion was a "net" opinion and should not be considered as competent evidence.
Plaintiff did not file its appeal within forty-five days of the November 21, 2008 order granting defendants summary judgment, as required by Rule 2:4-1(a). Although the time to file the appeal was tolled by the filing of a motion for reconsideration, see Rule 2:4-3(e), the forty-five day clock did not start anew from the date that motion was denied. Instead, plaintiff's last day to serve and file its notice of appeal was February 24, 2009; the appeal was not filed until March 2, 2009. Therefore, only plaintiff's appeal from the denial of its reconsideration motion is timely.
We have, in the past, exercised our discretion sua sponte to provide relief from strict compliance with the time frames contained in our Rules, particularly when it is necessary to resolve all issues presented by the parties. See Pressler, Current N.J. Court Rules, comment 3 on R. 2:4-4 (2010) (citing Panetta v. Equity One, Inc., 378 N.J.Super. 298, 309, 875 A.2d 991 (App. Div.2005) (granting leave to appeal as within time "so that closure of the overarching issues that the parties have presented may be achieved"), rev'd on other grounds, 190 N.J. 307, 920 A.2d 638 (2007)). In this case, "the substantive issues... and the basis for the motion judge's ruling on the summary judgment and reconsideration motions was the same." Fusco v. Bd. of Educ. of Newark, 349 N.J.Super. 455, 461, 793 A.2d 856 (App.Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002). And, while we affirm the motion judge's orders, we do so, in part, for reasons other than those she expressed. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J.Super. 145, 169, 887 A.2d 1170 (App.Div.2005). As a result, we choose to exercise our discretion, extend the time for filing an appeal from the grants of summary judgment to defendants, and consider the merits of plaintiff's appeal.
When reviewing a grant of summary judgment, we employ the same standards used by the motion judge. Atl. Mut. Ins. *542 Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230, 903 A.2d 513 (App. Div.) (citation omitted), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). In conducting our review of the motion record, we accord plaintiff the benefit of all the favorable evidence and inferences. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
We first turn to plaintiff's argument regarding the presumption of negligence that applies whenever goods are damaged while in the possession of a bailee. Although plaintiff posits the argument in relation to both defendants, and the judge's letter opinion included both FAS and the Port Authority in its analysis of the issue, we fail to see how the Port Authority could be considered the bailee of plaintiff's plane. See LaPlace v. Briere, 404 N.J.Super. 585, 588-89, 962 A.2d 1139 (App.Div.2009) (holding that a bailee "must have possession and primary control over the chattel" for a bailment to arise) (citing City of Jersey City v. Liggett & Myers Tobacco Co., 14 N.J. 112, 115, 101 A.2d 555 (1953)), certif. denied, 199 N.J. 133, 970 A.2d 1049 (2009)). It is undisputed that the Port Authority never possessed or controlled plaintiff's plane.
If the bailment is for mutual benefit, as was the arrangement between plaintiff and FAS, a bailee will be liable for any loss caused by its "failure to exercise reasonable care for the safekeeping of the" goods. Charles Bloom & Co. v. Echo Jewelers, 279 N.J.Super. 372, 380, 652 A.2d 1238 (App.Div.1995) (internal quotations and citations omitted). When goods are damaged while in the care of a bailee, a presumption of negligence arises, and a prima facie case of negligence is established against the bailee. McGlynn v. Parking Auth. of Newark, 86 N.J. 551, 556, 432 A.2d 99 (1981).
Once established, a "defendant must meet or rebut the procedural presumption by coming forward with evidence to show that the loss or damage occurred by reason of a cause other than its negligence, or if it cannot do that, to show that it exercised due care." Kushner v. President of Atl. City, Inc., 105 N.J.Super. 203, 213, 251 A.2d 480 (N.J.Co.1969); see also McGlynn, supra, 86 N.J. at 562, 432 A.2d 99 ("The presumption shifts the burden of going forward to [defendant] to show that it was not negligent or that its negligence did not cause the damage.").
Here, FAS demonstrated both that it exercised due care and that plaintiff's loss was caused by something other than any negligence by FAS. FAS parked the aircraft seventy-five feet from the fence. In doing so, it violated no standards promulgated by the FAA, TSA or any other governmental agency. Indeed, both Statile and Chastain indicated that upon their inspection of the airport, they saw other planes parked at distances of twenty feet from perimeter fences. Plaintiff produced no expert opinion regarding the minimum safe distance that a plane should be parked from an airport perimeter fence.
Additionally, it was undisputed that Benavides' negligent driving was a proximate cause of plaintiff's damages. Her negligence was the primary causative agent, without which any act or omission by FAS would be irrelevant.
Thus, the evidence in the record reflected that FAS did nothing wrong with respect to the manner in which it maintained plaintiff's plane while it was in its custody and control. FAS rebutted the presumption of negligence that arose out of the bailee-bailor relationship. See Franklin v. Airport Grills, Inc., 21 N.J.Super. 409, 412-13, 91 A.2d 348 (App. Div.1952) (explaining the type of proof adduced *543 by the defendant that rebutted the presumption of negligence). Without the presumption of negligence resulting from its legal relationship with FAS, plaintiff can point to only one factual assertion to support its contention that FAS was negligent, i.e., FAS's failure to have a guide rail, in addition to the cyclone fence, on the perimeter of its leasehold.
As to the Port Authority, plaintiff was not entitled to any presumption of negligence because no bailment existed. Plaintiff's claim devolves to the same factual assertion, i.e., that the Port Authority was negligent in its capacity as owner of the airport because it failed to install a guide rail along the fence that bordered Industrial Avenue.
The parties have extensively argued the issue of defendants' alleged negligence by focusing upon the foreseeability of the accident. Plaintiff argues that contrary to the motion judge's conclusion, the accident was entirely foreseeable, as demonstrated by the fact that a similar accident occurred along another portion of the airport's perimeter fence. The Port Authority and FAS contend that the accident, or at least its end result, i.e., that a vehicle would breach the fence and travel another seventy-five feet before being brought to a stop, was unforeseeable, and that significant differences existed between the nature of the road where the earlier accident occurred, and Industrial Avenue. In our opinion, however, foreseeability is not the determinative issue in this case; rather, the critical inquiry centers on the scope of the duty that defendants in their roles as bailee and landowner owed to plaintiff.
In this context, foreseeability is only one of several factors relevant to the issue of duty.
[T]he concept of foreseeability ... [involves consideration of] whether a reasonably prudent person should have anticipated that injury to the plaintiff, or to those in a like situation, would probably result. A legal duty arises to take some action if harm to another is reasonably foreseeable in the event that it is not taken, or to refrain from taking some action if harm to another is reasonably foreseeable in the event it is taken.
[Mavrikidis v. Petullo, 153 N.J. 117, 147, 707 A.2d 977 (1998) (quoting DeBonis v. Orange Quarry Co., 233 N.J.Super. 156, 164, 558 A.2d 474 (App. Div.1989)).]
"Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists.... The ability to foresee injury to a potential plaintiff is crucial in determining whether a duty should be imposed." J.S. v. R.T.H., 155 N.J. 330, 337-38, 714 A.2d 924 (1998) (internal quotations and citations omitted).
Foreseeability is an issue usually reserved for the jury. See Hill v. Yaskin, 75 N.J. 139, 144, 380 A.2d 1107 (1977) (quoting 57 Am.Jur.2d Negligence § 58 (1970) (footnotes omitted)). For purposes of summary judgment, we believe common sense compels the inescapable conclusion that any vehicle might stray from the road upon which it was traveling due to the negligence of its operator. The risk that harm might result to those near the road from that event is entirely foreseeable.[3]
*544 The scope of the duty defendants owed to plaintiff to guard against such a risk is a different, purely legal, matter. It is for the court to determine whether a duty exists, and, if so, "the scope or boundaries of that duty." J.S., supra, 155 N.J. at 339, 714 A.2d 924 (emphasis added). "Fairness, not foreseeability alone, is the test" in this regard. Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 515, 688 A.2d 1018 (1997).
As noted above, FAS, as bailee, owed plaintiff the duty to exercise reasonable care to safeguard its plane. As the owner of the land upon which the plane was parked, the Port Authority had the duty to exercise "reasonable care to guard against any dangerous conditions on [the] property that [it] either kn[ew] about or should have discovered." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434, 625 A.2d 1110 (1993). "`[A] dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties.'" Longo v. Aprile, 374 N.J.Super. 469, 474, 865 A.2d 707 (App.Div.2005) (quoting Roe ex rel. v. N.J. Transit Rail Operations, 317 N.J.Super. 72, 79, 721 A.2d 302 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999)). However, "when the risk of harm is that posed by third persons, a plaintiff may be required to prove that defendant was in a position to `know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[]' that was `likely to endanger the [property]' of another." J.S., supra, 155 N.J. at 338, 714 A.2d 924 (quoting Clohesy, supra, 149 N.J. at 507, 694 A.2d 1017) (internal quotations and citation omitted).
Regardless of how the duty is defined, its "scope ... is determined under the totality of the circumstances, and must be reasonable under those circumstances." J.S., supra, 155 N.J. at 339, 714 A.2d 924 (quotations omitted). "In fixing the limits of liability as a matter of public policy, courts must draw on `notions of fairness, common sense, and morality.'" Id. at 339, 714 A.2d 924 (quoting Hopkins, supra, 132 N.J. at 443, 625 A.2d 1110). "In the final analysis, the reasonableness of action that constitutes such a duty is an essentially objective determination to be made on the basis of the material facts of each case." Id. at 340, 714 A.2d 924 (internal quotations and citation omitted).
To support the notion that the scope of defendants' duty in this case included the installation of a guide rail along Industrial Avenue, plaintiff relies upon Statile's report. Notably, the report cited no industry standard that required the perimeter fence to be of a particular material or strength, or, for that matter, that a perimeter fence was necessary at all.
Instead, Statile relied upon the D.O.T.'s design standards that include a rather equivocal statement of when the installation of guide rail is preferred. Needless to say, the D.O.T. standards have nothing to do with fences, much less fences around airports.
Read broadly, the D.O.T. guidelines do not suggest that a guide rail was necessary along the relevant portion of Industrial Avenue. Statile supplied no data or studies that explained what conditions compel the installation of a guide rail along a roadway. Indeed, the report is bereft of any explanation why Industrial Avenue, a two-lane road with a posted speed limit of twenty-five miles per hour, was different *545 from thousands of miles of similar roadway throughout New Jersey alongside commercial premises upon which guide rail has never been installed.
In short, there is nothing presented that in common sense or fairness convinces us that defendants' duty to exercise reasonable care over plaintiff's plane or to provide a reasonably safe place for it to be parked included an obligation to install guide rail or other protective devices along Industrial Avenue. There were no prior accidents along that low-speed, two-lane road that would have placed either defendant on notice of the "`likelihood of conduct on the part of [a] third person[]' that was `likely to endanger the [property]' of another." J.S., supra, 155 N.J. at 338, 714 A.2d 924 (quoting Clohesy, supra, 149 N.J. at 507, 694 A.2d 1017).
Plaintiff, in essence, requests us to expand the duty owed by landowners or lessees to those on their land to include protection against the risks created by the negligence of third-parties using an adjacent public road. We find no authority for such an expansion, and, "under the totality of the circumstances" presented in this case, we believe it is not warranted. J.S., supra, 155 N.J. at 339, 714 A.2d 924.
In conclusion, plaintiff failed to adduce any proof that FAS was negligent other than the presumption of negligence based upon its status as bailee. In LaPlace, supra, we recently affirmed the grant of summary judgment when the presumption of negligence was rebutted, and the plaintiff "failed to come forward with any additional proofs" regarding the defendant's negligence. 404 N.J.Super. at 602-03, 962 A.2d 1139. Since FAS rebutted the presumption, and plaintiff adduced no additional proof of negligence, "no rational factfinder could determine" FAS was negligent, and summary judgment was therefore properly granted. Id. at 603, 962 A.2d 1139.
Furthermore, with regard to both defendants, we conclude that the duty owed to plaintiff could not in fairness or reason include an obligation to install guide rail or other devices to protect against the negligence of third parties driving on an adjacent road.
Affirmed.
NOTES
[1] The complaint also alleged negligence on the part of the Benavides defendants; plaintiff settled its claim against them.
[2] Plaintiff also consented to the grant of summary judgment to De Stefano since it had filed no opposition to his motion. On appeal, plaintiff has not raised any argument in its brief regarding De Stefano's liability. Because all issues as to all parties were resolved by the motion judge, plaintiff has waived any appeal of the grant of summary judgment to De Stefano. See Finderne Heights Condo. Ass'n v. Rabinowitz, 390 N.J.Super. 154, 166, 915 A.2d 16 (App.Div.2007).
[3] We distinguish, in this regard, the issue of foreseeability as it relates to proximate cause, i.e., whether defendants could have reasonably foreseen that the Benavides's vehicle would continue for seventy-five feet without stopping. "Foreseeability that affects proximate cause ... relates to ... whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff reasonably flowed from defendant's breach of duty.... Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty." Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 503, 694 A.2d 1017 (1997) (internal quotation and citation omitted).