**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1638-18

BANK OF AMERICA, N.A.,

    Plaintiff-Respondent,

v.

VIOLA STEPHENS,

    Defendant-Appellant.

_____

> Argued June 8, 2021 – Decided July 6, 2021
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-048329-13.
>
> Marc Stephens argued the cause pro se.
>
> Robert D. Bailey argued the cause for respondent (Parker Ibrahim & Berg LLP, attorneys; Charles W. Miller, III, Brian A. Turetsky, and Robert D. Bailey, on the brief).

PER CURIAM

In this residential mortgage foreclosure action, defendant Viola Stephens appeals from three Law Division orders: 1) a November 2, 2018 order denying her motion for reconsideration of a June 1, 2018 order that rejected her application to vacate an entry of default in favor of plaintiff Bank of America, N.A.; 2) a September 13, 2019 order that denied her motion for reconsideration of an April 1, 2019 order[1] that rejected her application to vacate the November 20, 2018 final judgment; and 3) the April 1, 2019 order.[2] On appeal, defendant claims that the court's decisions in denying the aforementioned applications

---

[1] In an accompanying "rider" the court noted that "[a]lthough defendant's motion is captioned as a [m]otion to [v]acate [j]udgment and for a [s]tay [p]ending [a]ppeal, it essentially is a [m]otion for [r]econsideration, as well as a request for a [s]tay [p]ending [a]ppeal."

[2] Defendant's initial and amended notices of appeal do not specifically list the November 20, 2018 final judgment. In certain circumstances, we may exercise our discretion to review such a conclusive order if the defendant's Case Information Statement (CIS) "makes clear that this is a matter in which the motion for reconsideration implicates the substantive issues underlying the order for judgment," Tara Enters. v. Daribar Management Corp., 369 N.J. Super. 45, 60 (App. Div. 2004), or if "'the basis for the motion judge's ruling on the [original] and reconsideration motions was the same.'" Potomac Aviation, LLC v. Port Auth., 413 N.J. Super. 212, 222 (App. Div. 2010) (quoting Fusco v. Bd. of Educ., 349 N.J. Super. 455, 461 (App. Div. 2002)). Here, defendant's CIS related to her appeal of the September 13, 2019 order specifically stated she was appealing the "[e]ntire [j]udgment." Accordingly, we consider the November 20, 2018 final judgment in our review.

A-1638-18

were both procedurally improper and substantively erroneous. For the following reasons, we remand for further proceedings.

I.

We glean the following facts and procedural history from the pleadings and motion record. On April 23, 2009, defendant executed a note promising to repay, with applicable interest, all funds that plaintiff advanced to her up to a maximum amount of $615,000. To secure repayment, defendant also executed a reverse mortgage on her home in Englewood. Plaintiff subsequently assigned the mortgage to Champion Mortgage Company in 2012.

The note included an acceleration clause providing that plaintiff "may require immediate payment-in-full of all outstanding principal and accrued interest if . . . [a]n obligation of the [b]orrower under the [s]ecurity [i]nstrument is not performed." A separate provision in the mortgage required defendant to "pay all property charges . . . [including] taxes."

After defendant failed to pay her real estate taxes, Champion sent her a "Mortgage Due & Payable Notification" letter on August 12, 2013, by certified mail. In that correspondence, Champion informed defendant that "the reverse mortgage is technically in default due to the non-payment of taxes and/or insurance on the principal residence."

3

A-1638-18

Defendant failed to cure the default. As a result, Champion filed a foreclosure complaint against her and other interested parties on December 24, 2013. The motion record indicates that defendant was served with the complaint by certified mail on an unspecified date and that her son, Marc Stephens,[3] was personally served on April 17, 2014.

On March 25, 2014, defendant attempted to file an answer signed by Marc, who characterized himself as defendant's "attorney[-]in[-]fact." The court rejected defendant's answer because she failed to pay the required filing fee.

On July 14, 2014, the court granted defendant's request for a filing fee waiver. Subsequently, defendant filed a motion to vacate default. The court denied the application on September 3, 2014, and entered a letter order which stated:

> A motion to vacate default was filed by or on behalf of Viola Stephens on August 7, 2014[,] and was opposed by . . . [Champion] on August 11, 2014. The motion is presently scheduled for September 5, 2014.
>
> No default has yet been entered against Viola Stephens. Accordingly, no motion to vacate is necessary and same shall be deemed withdrawn.

---

[3] We utilize the parties' first names in order to differentiate them because they share a common surname, intending no disrespect.

A-1638-18

> Viola Stephens shall file with the court an [a]nswer to the [f]oreclosure [c]omplaint and serve a copy upon the plaintiff not later than October 3, 2014.

It does not appear that defendant filed an answer by October 3, 2014. In an October 13, 2015 notice from the Superior Court Clerk's Office, titled "Notice of Foreclosure Processing Deficiency," Marc was advised that "[his] pleading [was] marked '[r]eceived but [n]ot [f]iled'" pursuant to [Rule] 1:5-6(c), because a $50 filing fee was not paid. The notice also informed Marc that the case was dismissed on August 28, 2015, and a motion was required to reinstate the matter. The record on appeal does not contain an explanation for the August 28, 2015 dismissal.

Despite the October 13, 2015 notice indicating the matter was dismissed, on October 20, 2015, the court granted Champion's request for an entry of default against defendant. In a letter accompanying the order, the court advised Marc and Champion's counsel that "only attorneys at law may represent a litigant in court, a [p]ower of [a]ttorney is insufficient."

On October 25, 2016, Champion re-assigned the mortgage back to plaintiff. Bank of America, however, was not substituted as plaintiff and the court dismissed the complaint on November 25, 2016, without prejudice under Rule 4:64-8 due to Champion's failure to prosecute.

A-1638-18

On October 4, 2017, Marc emailed Champion's counsel to inquire about a September 1, 2017 letter he received informing him that the Englewood property was in foreclosure. Marc noted that he was unaware "of any current foreclosure proceeding, and [that he] was not properly served." He further explained that Reverse Mortgage Solutions, plaintiff's loan servicer, forwarded him a check for roof repairs on March 23, 2017.

As best we discern from the record, based on the October 4, 2017 communication, defendant believed the case was re-opened a year after its dismissal. Accordingly, on October 23, 2017, Marc, on behalf of defendant, filed a motion to vacate the entry of default which appended an amended answer, with counterclaims, signed by defendant and himself. On December 13, 2017, the court issued another letter order rejecting defendant's motion. Specifically, the court stated:

> The case is presently dismissed[,] therefore the motion is dismissed as premature. A motion to vacate the dismissal would have to be filed and granted for defendant[']s[] motion to be ripe.

On January 22, 2018, the court granted Champion's motion to reinstate and entered a February 28, 2018 order substituting Bank of America as plaintiff. Thereafter, on March 28, 2018, plaintiff moved for final judgment. While that motion was pending, and before final judgment was entered, defendant moved

6

to "[v]acate [f]inal [j]udgment and [w]rit of [e]xecution." As best we can discern, defendant's application sought to vacate the entry of default, as the court had not entered a final judgment or a writ of execution.

On June 1, 2018, the court denied defendant's motion. The order noted that the motion was denied "for the reasons set forth [on June 1, 2018]." The appellate record does not include a copy of the court's Rule 1:6-2(f) statement of reasons supporting the June 1, 2018 order.

Defendant subsequently filed a motion for reconsideration of the June 1, 2018 order. During oral arguments on the motion for reconsideration, the court observed that Marc did not have power of attorney to represent defendant. The court noted that a "declaration" defendant executed granting power of attorney to Marc only pertained to the proceedings related to the June 1, 2018 motion. It further explained that although Marc did not "have any authority" to represent defendant in the present matter, it nevertheless agreed to permit him to participate in oral argument.

The court ordered Marc to provide "any and all documentation that [he had] giving [him] authority to proceed on . . . [defendant's] behalf" by October 4, 2018. The court further clarified that "authority" meant "power of attorney,"

and that if nothing was submitted by the October 4, 2018 deadline, it would "simply respond to the motion in whatever way [it] deem[ed] fit at that time."

On November 2, 2018, the court denied defendant's motion for failure to "provide any additional evidence or arguments that would merit reconsideration." In its accompanying written statement of reasons, the court noted that it allowed Marc to represent defendant because he "[s]ubmitted additional papers certifying that [d]efendant . . . had appointed [him] as her attorney-in-fact."

On November 20, 2018, the court entered an uncontested final judgment in the amount of $479,922.75 and ordered a sheriff's sale of the property.[4] Defendant appealed from the November 2, 2018 order and while the appeal was pending, filed two motions to vacate final judgment and stay the sheriff's sale. The court denied both motions on April 1, 2019.

A week later, on April 8, 2019, defendant filed a motion to "stay . . . all foreclosure proceedings pending appeal," and plaintiff subsequently cross-moved for attorney's fees. On July 12, 2019, the court denied both motions.

---

[4] Plaintiff's counsel advised us during oral argument that the property has not yet proceeded to sheriff's sale.

Defendant then filed a motion for reconsideration of the April 1, 2019, order which the court denied on September 13, 2019. In support of its decision, the court stated:

> Here, defendant has failed to shoulder the heavy burden attendant injunctive relief. Most significantly, the defendant has very little, if any, likelihood of success on the merits, given the fact that three prior motions requesting the same relief have been denied. Further, the appeal at bar does not present a meritorious issue. In addition, an assessment of the relative hardship to the parties reveals that the equities lie in favor of plaintiff.

This appeal followed in which defendant asserts that the court improperly failed to vacate the October 20, 2015 default and November 20, 2018 final judgment. Defendant contends that she filed a timely answer to the foreclosure complaint and substantially complied with all applicable court rules.

Defendant also argues that the orders under review should be reversed because plaintiff failed to: 1) provide competent evidence establishing the amount due on the mortgage loan; 2) establish standing to prosecute the foreclosure action as it was not in possession of the underlying note; and 3) properly serve its notice of intention to foreclose.

Further, defendant maintains that she was not in default under the note and the court incorrectly failed to conclude that plaintiff's enforcement of the

note was time barred. Finally, defendant maintains that the court violated her Fifth Amendment right to due process and Seventh Amendment right to a jury trial.

II.

We begin our analysis with a discussion of the relevant standards of review. Our standard of review of an order denying reconsideration is deferential. "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

10

Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent "a clear abuse of discretion." Pitney Bowes Bank, Inc., 440 N.J. Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).[5]

We apply a similar standard of review with respect to a court's denial of a motion to vacate an entry of default. See U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). Pursuant to Rule 4:43-3, a court may vacate the entry of default upon "good cause shown." A motion to vacate an entry of default is afforded a more liberal standard than a motion to vacate a default judgment. Indeed, "the requirements for setting aside a default under Rule 4:43-3 are less stringent than . . . those for setting aside an entry of default judgment under Rule 4:50-1." N.J. Mfrs. Ins. v. Prestige Health Grp., LLC, 406 N.J. Super. 354, 360 (App. Div. 2009). "[G]ood cause . . . requires the exercise of sound discretion by the court in light of the facts and circumstances of the particular case." O'Connor v. Altus, 67 N.J. 106, 129 (1975) (citation omitted).

In considering whether good cause exists, courts generally consider the movant's "absence of any contumacious conduct" and the presence of a

---

[5] Reconsideration of an interlocutory order, however, requires a less stringent showing than reconsideration of a final order. Indeed, we recently concluded that "[u]ntil entry of final judgment, only 'sound discretion' and the 'interest of justice' guides the trial court." Lawson v. Dewar, ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 7).

A-1638-18

meritorious defense.  Ibid.  In particular, "the showing of a meritorious defense

is a traditional element necessary for setting aside both a default and a default

judgment."  Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:43-3

(2021); see also O'Connor, 67 N.J. at 129 (finding "good cause" under Rule

4:43-3 includes "the presence of a meritorious defense").  As with a motion to

vacate a default judgment, there is no point in setting aside an entry of default

if the defendant has no meritorious defense.  "The time of the courts, counsel

and litigants should not be taken up by such a futile proceeding."  Guillaume,

209 N.J. at 469 (citation omitted).  We have noted:

> This is especially so in a foreclosure case where the
> mere denominating of the matter as a contested case
> moves it from the expeditious disposition by the Office
> of Foreclosure in the Administrative Office of the
> Courts, R. 1:34-6 and R. 4:64-1(a), to a more protracted
> treatment by the Chancery Division providing
> discovery and raising other problems associated with
> trial calendars.  If there is no bona fide contest, a
> secured creditor should have prompt recourse to its
> collateral.
>
> [Trs. of Local 478 Trucking & Allied Indus. Pension
> Fund v. Baron Holding Corp., 224 N.J. Super. 485, 489
> (App. Div. 1988).]

Here, we are unable to determine if the court properly exercised its

discretion in entering the orders under review, because the record does not

include the court's reasoning for the June 1, 2018 order denying defendant's

12

A-1638-18

motion to vacate entry of default. Neither party has provided us with a copy of the court's factual findings and legal conclusion related to that order, and despite our independent efforts, we were unable to find any record of an oral or written decision.[6]

That omission is not insignificant. The court's June 1, 2018 decision formed the basis for the court's decision preventing the matter from being decided on the merits. It also was the necessary precondition for final judgment and was relied upon by the court when it denied defendant's subsequent motions for reconsideration.

Nor were we able to discern from the court's subsequent orders denying reconsideration and attendant statements of reasons, the foundation for the court's underlying decision as to whether defendant acted contumaciously or failed to establish a meritorious defense. Specifically, we cannot determine if the court considered, in the context of a Rule 4:43-3 motion to vacate, that for significant periods, defendant was under the reasonable belief that plaintiff's foreclosure complaint was dismissed or not actively prosecuted.

---

[6] Although we acknowledge defendant had an affirmative obligation under Rule 2:6-1 to include the accompanying statement of reasons for the June 1, 2018 order, we will not penalize defendant for failing to discover a record that does not appear to exist.

For example, the court's September 3, 2014 letter informed defendant that default had not been entered against Viola. The case remained dormant for approximately thirteen months until the October 20, 2015 entry of default. Prior to the court entering default, however, Marc was apparently advised by the Clerk's Office that the case had been dismissed on August 28, 2015.

After default was entered, Champion took no further action for another year, resulting in the November 25, 2016 order dismissing the action for lack of prosecution. Defendant had no reason to believe the case was ongoing until he received the September 1, 2017 letter indicating that the property was in foreclosure. In response, defendant filed a motion to vacate default, and was again informed, on December 13, 2017, that the case was dismissed, and an application needed to be filed to reinstate the matter.

Similarly, without factual findings and legal conclusions, we cannot determine what significance the court gave to the fact that at the time the June 1, 2018 order was entered, defendant had apparently filed, as an attachment to her October 23, 2017 motion to vacate, an amended answer with counterclaims. Likewise, we are unable to evaluate what significance, if any, the court gave to defendant's failure to comply with its September 3, 2014 order directing that an answer be filed by October 3, 2014, particularly in light of the November 25,

14

2016 dismissal. Finally, as noted, we cannot on the current record evaluate the sufficiency of the court's apparent conclusion that defendant failed to establish a meritorious defense to the foreclosure action

III.

In the face of this incomplete record, plaintiff asks us to affirm the orders under review by arguing defendant failed to establish a meritorious defense to the foreclosure action. In making this argument, plaintiff essentially requests us to exercise original jurisdiction to make factual findings supporting the June 1, 2018 order, November 20, 2018 final judgment, and the November 2, 2018, April 1, 2019, and September 13, 2019 orders denying defendant's motions for reconsideration. We decline to do so.

Rule 2:10-5 provides that "[t]he appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review." See also N.J. Const. art. VI, § 5, ¶ 3. "However, [this Court's] 'original factfinding authority must be exercised only with great frugality and in none but a clear case free of doubt.'" Allstate Ins. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (quoting Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003)). "In determining whether to exercise original jurisdiction, an appellate court not only must weigh considerations of efficiency and the public

A-1638-18

interest that militate in favor of bringing a dispute to a conclusion, but also must evaluate whether the record is adequate to permit the court to conduct its review." Price v. Himeji, LLC, 214 N.J. 263, 295 (2013).

An appellate court may "exercise original jurisdiction to eliminate unnecessary further litigation," but it is "discourage[d] . . . if factfinding is involved." Id. at 294 (quoting State v. Santos, 210 N.J. 129, 142 (2012)). We do not "'weigh[ ] evidence anew and mak[e] independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered' by the trial court." Fisher, 408 N.J. Super. at 302 (quoting Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999)).

For the reasons previously expressed, it would be inappropriate for the court to exercise its original jurisdiction here because the record is inadequate "to permit the court to conduct its review." Price, 214 N.J. at 295. By way of example only, the record does not contain the complete certifications of plaintiff's representatives establishing whether it complied with all procedural requirements, and accurately calculated the amount due. In this regard, the record only contains two partial, one-page certifications from 2017 and 2018 from plaintiff's loan servicer related to the amount due. Further, the note,

16

mortgage, and assignment were appended to the appellate record without the underlying certifications that were submitted to the court and assumedly based on personal knowledge as required by Rule 1:6-6.

IV.

In light of our decision to remand this matter, we discuss a separate procedural irregularity which permeated the proceedings and should not be repeated on remand. Specifically, it appears that the court allowed Marc to represent defendant despite acknowledging that he had no authority to do so. Indeed, in the court's October 20, 2015 letter, it specifically noted a power of attorney was insufficient to confer authority to represent a party. The court also addressed Marc's status at the September 18, 2018 hearing and despite recognizing that he was not an attorney, or otherwise authorized to represent his mother's interests, nevertheless permitted him to submit additional documentation establishing his power of attorney.

Finally, the court in its November 2, 2018 order, apparently relaxed Rule 1:21-1, and noted that Marc "submit[ted] additional papers certifying that [d]efendant . . . had appointed [him] as her attorney-in-fact." In doing so, the court again permitted Marc to argue on behalf of defendant. Marc's apparent appointment as "attorney-in-fact," however, did not authorize him to practice

17

law, as an "attorney-in-fact" is not an attorney-at-law.  See, In re Opinion 50, A Nonlawyer Who Holds a Power of Attorney May Not Engage in the Practice of Law, 211 N.J.L.J. 866 (March 12, 2013).

V.

In sum, we remand for the court to issue factual findings and legal conclusions with respect to the court's June 1, 2018 order.  Nothing in our opinion should be interpreted as an expression of our views as to the outcome of the remanded proceedings.  On remand, Marc is precluded from representing defendant's interests.  Defendant shall either appear pro se or retain counsel.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1638-18